## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Raymond Ankner, | Case No. 2:21-CV-330-JES-NPM |
| Plaintiff, | |
| v. | |
| United States of America, | |
| Defendant. | |
| CJA and Associates, Inc., | Case No. 2:21-CV-331-JES-NPM |
| Plaintiff, | |
| v. | |
| United States of America, | |
| Defendant. | |
| RMC Property & Casualty, Ltd., | Case No. 2:21-CV-333-JES-NPM |
| Plaintiff, | |
| v. | |
| United States of America, | |
| Defendant. | |
| RMC Consultants, Ltd., | Case No. 2:21-CV-334-JES-NPM |
| Plaintiff, | |
| v. | |
| United States of America, | |
| Defendant. | |

# Table of Contents

I.   The United States' Position Was Substantially Justified..........................5

   A. RMC Group organized a plan or arrangement. ........................8

   B. RMC Group made statements about the tax benefits of its captive insurance program. ..........................9

   C. RMC Group knew or had reason to know that its statements were false. ..........................12

      1. RMC Group's captives provided little to no insurance to unrelated parties. ..........................14

      2. Actuarial analyses all showed RMC Group's captive program failed the Revenue Ruling's test. ..........................16

      3. RMC P&C's financial statements show RMC Group knew they failed the Revenue Ruling test. ..........................18

      4. RMC Group relied on a mistake of law, which is no excuse to § 6700 penalty liability. ..........................19

   D. The tax benefits RMC Group promised were material. ........................21

II.  RMC Group Unreasonably Protracted Litigation. ....................22

   A. RMC Group's protective-order motion was baseless. ...........................22

   B. RMC Group repeated the frivolous argument that the falsity of its statements was not at issue. ..........................23

   C. RMC Group unreasonably drew out its discovery responses. ................24

III. RMC Group Failed to Adequately Establish Net Worth. .........................25

   A. RMC failed to submit financial evidence. ...............................25

   B. RMC Group's conclusory declaration does not even allege the entities' net worth at the time this suit was filed. ....................27

Conclusion ..........................27

## United States' Opposition to RMC Group's Motion for Attorney's Fees and Costs

Raymond Ankner, CJA and Associates, Inc., RMC Property and Casualty, Ltd., and RMC Consultants (collectively, "RMC Group") sued seeking a refund of penalties under 26 U.S.C. § 6700 related to their captive program. RMC Group was assessed § 6700 penalties for promoting tax benefits of their captive program, even though it was not "insurance" for tax purposes. RMC Group's captive program did not qualify as insurance because it failed to distribute half the program's risk among unrelated entities.

RMC Group designed the captive program for the primary purpose of providing self-insurance. Its customers only wanted to self-insure. Only a single minuscule claim (0.002 percent of total premiums) was paid by the excess-reinsurance risk-distribution mechanism. And when RMC Group finally asked actuaries how much risk was distributed, the answer was, without exception, less than 50 percent of the expected losses would be covered by unrelated parties.

RMC Group moved for summary judgment that they were not liable for the penalties. The Court correctly denied RMC Group's motion because there was ample evidence to show that RMC Group was liable for penalties. And the Court denied RMC Group's motion for judgment as a matter of law for the same reason. Yet after a jury verdict in its favor, CJA, RMC P&C, and RMC

Consultants have moved for an award of fees under 26 U.S.C. § 7430, claiming that the United States' position was not even substantially justified. As shown below, the evidence at trial was far more than enough to substantially justify the United States' position under the governing law. For that reason alone, the Court should deny RMC Group's motion.

But RMC Group's motion also has other flaws. RMC Group unreasonably protracted this litigation by filing, and then extensively briefing, a wasteful motion for a protective order. In that motion and elsewhere, RMC Group repeated a frivolous argument that the falsity of its promises of tax benefits did not matter. RMC Group also failed to provide timely discovery responses (in one case, delaying a response by seventeen months). In these ways, RMC Group artificially and needlessly inflated its fees, and it should not be rewarded for doing so.

Finally, RMC Group failed to adequately support its contention that CJA, RMC P&C, and RMC Consultants satisfy the net worth requirement. It submitted no financial data at all in support of its motion. And the meager evidence it did offer is a conclusory declaration. The declaration is not from any financial professional, but from RMC Group's general counsel. And it does not even allege what the entities' actual net worth was *at the time the suit was filed*, as required. For these reasons, even if the Court were to find

the United States' position was not substantially justified, it should still deny RMC Group's motion.

## I. The United States' Position Was Substantially Justified.

RMC Group is not a "prevailing party" unless the United States' position was not "substantially justified." § 7430(c)(4)(B). "A position that is 'substantially justified' is one that is justified to a reasonable degree that could satisfy a reasonable person or that has a reasonable basis in both law and fact." *Wilkes v. United States*, 289 F.3d 684, 688 (11th Cir. 2002); *accord Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (holding a position is substantially justified if it has "a reasonable basis both in law and fact" (cleaned up)).

This standard's reference to a "reasonable person" resembles the standards for whether a summary-judgment dispute of fact is "genuine" or for judgment as a matter of law. (*See* Op. & Order at 2, ECF No. 113 ("'An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.'" (quoting *Baby Buddies, Inv. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1314 (11th Cir. 2010))).) *See* Fed. R. Civ. P. 50(a)(1) (applying if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis"). Here, the Court denied RMC Group's motion for summary judgment because "it is also clear that the record contains ample evidence from which a reasonable jury could find for the United States." (Op.

& Order at 12.) And the Court denied RMC Group's motion for judgment as a matter of law because "there's ample evidence that a reasonable jury could find a plan or arrangement" and "there's reasonable evidence from which a reasonable jury could find that the Government had established" the remaining elements. (Trial Day Three Tr. 290:18–291:9.) The Court's previous rulings strongly suggest that the evidence was sufficient to satisfy a reasonable person that the United States' position had a reasonable basis in both law and fact—that is, that the United States' position was substantially justified. *Cf. Davis v. Butler*, 522 S.E.2d 548, 550 (1999) ("[A]lthough the plaintiff may lose at trial, such denial of summary judgment constitutes a legal determination that the action has substantial justification, because it is not groundless or frivolous and can proceed to jury trial.").

Indeed, the evidence at trial went well beyond showing a substantial justification. Not only would a reasonable person conclude that the United States' position had a *reasonable basis* in law and fact, but a reasonable person *would conclude* that the United States proved that RMC Group *was* liable for § 6700 penalties. *See Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994) (affirming refusal to grant fees motion in case with "substantial issues that were difficult for at least [the district] court to determine"); *Grant v. Comm'r*, 103 F.3d 948, 952 (11th Cir. 1996) (affirming denial of fees where position was correct "as a matter of law" even if

ultimately mistaken factually). The elements of § 6700 penalties are: (a) the promoter organized (or assisted in the organization of) any plan or arrangement and (b) the promoter made or furnished or caused another person to make or furnish a statement about tax benefits (c) which the promoter knows or has reason to know were false or fraudulent (d) as to any material matter. As explained in Sections A–D below, the evidence at trial showed that RMC Group's promotion of its captive insurance program satisfied each of these elements.

While RMC Group summarily concludes that its captive program satisfied Revenue Ruling 2002-89's 50-percent-unrelated-risk test and that RMC Group did not have reason to know otherwise (RMC Group Mot. for Litigation Fees/Costs ¶¶ 32, 35, ECF No. 159), RMC Group's conclusion is not based on the *evidence* presented at trial.[1] Indeed, RMC Group's motion does not cite a single trial exhibit or line of trial testimony. Instead, RMC Group argues that the United States' position was not substantially justified (a) because the jury returned a verdict in their favor and (b) because they say so.

---

[1] In fact, the Court sustained an objection and struck the scienter argument RMC Group now resurrects in paragraph 35 of its motion. (Trial Day Three Tr. 235:15–236:1.) There was no evidence at trial of the *IRS's* knowledge of anything (only of RMC's general counsel's understanding of an IRS notice), nor would any such evidence have been relevant to *RMC's* state of mind. *See United States v. Dalton*, 2022 WL 4596660, at *3 (C.D. Cal. Aug. 26, 2022) ("[C]ourts have generally found that internal government documents discussing the party's case are not relevant to the party's state of mind . . . ." (cleaned up)).

(RMC Group Mot. ¶¶ 26, 32, 37.e–f.)[2] But the jury's verdict does not answer whether the United States' position was substantially justified. *Phillips v. Comm'r*, 851 F.2d 1492, 1499 (D.C. Cir. 1988) ("[T]he fact that the Government loses the case should not be determinative." (cleaned up)). To the contrary, the actual evidence amply demonstrates substantial justification.

A.    <u>RMC Group organized a plan or arrangement.</u>

RMC Group's captive program fell well within the heart of the broad terms "plan" and "arrangement." RMC Group structured the program to always include: (a) formation of a micro-captive, which would be managed by RMC Group, and (b) payments to the micro-captive, structured so that 50 percent were funneled through RMC P&C (RMC Group's "reinsurance pool"). (Ex. J-131 ("Joint Fact Stip.") ¶¶ 29, 31, 33–37, 40, 44, ECF No. 137.) These consistent characteristics are more than enough to define the plan or arrangement, as these terms are interpreted broadly. *See United States v. Stover*, 650 F.3d 1099, 1107 (8th Cir. 2011); *United States v. RaPower-3 LLC*, 343 F. Supp. 3d 1115, 1170 (D. Utah 2018) ("Any 'plan or arrangement' having some connection to taxes is a 'plan' under § 6700." (cleaned up)), *aff'd*, 960 F.3d 1240 (10th Cir. 2020).

---

[2] Many of RMC Group's depictions of the trial evidence (without citations) are not supported by any trial evidence or are even plainly false, as discussed below. (*See, e.g.*, RMC Group Mot. ¶¶ 32, 33, 35, 36, 37.d.)

RMC Group's only argument to the contrary had been that its captive program was not a "program," but only disparate, unrelated services. (*See, e.g.*, Trial Day Two Tr. 12:24–13:2; Pls.' Opp'n to U.S. Mot. for Summ. J. at 5–6, ECF No. 105.) But RMC Group later abandoned this argument. (Trial Day Four Tr. 103:2–6 ("It's a program.").) Instead, RMC Group then argued that a "program" is somehow different from a "plan" or "arrangement." (*See id.* at 102:21–103:9.) But RMC Group could not explain this supposed difference, and it has no support in English language or law. *See* Webster's New World College Dictionary 1100 (Michael Agnes ed., 4th ed. 2009) (defining "plan" to include a "*program* for making, doing, or *arranging* something" (emphasis added)); *Tarpey v. United States*, 78 F.4th 1119, 1125, 1129 (9th Cir. 2023) (referring to the § 6700 plan or arrangement as "the timeshare donation program"); *RaPower-3*, 343 F. Supp. 3d at 1161 (referring to the § 6700 plan or arrangement as "the solar energy program").

B. <u>RMC Group made statements about the tax benefits of its captive insurance program.</u>

The evidence at trial overwhelmingly and incontrovertibly showed that RMC Group repeatedly stated that participating in its captive insurance program would allow its customers to avoid paying taxes on amounts designated as premium payments.

First, RMC Group provided pro forma financial projections to customers showing no taxes owed on premium payments to captives. (*See, e.g.*, Exs. J-17, J-38, J-75–J-78.) Indeed, RMC Group stipulated as much. (Joint Fact Stip. ¶¶ 54–57.)

Second, RMC Group furnished draft tax returns to its customers. (*See, e.g.*, Exs. J-81–J-88.) The tax returns did not report any taxable income resulting from the captives' receipt of premium payments. (*See, e.g.*, Exs. J-81–J-84, J-86–J-88 (each Schedule A, line 1, Schedule E).) Again, RMC Group stipulated as much. (Joint Fact Stip ¶¶ 51, 53.)

Third, RMC Group's marketing materials identified the purported tax benefits of RMC Group's captive program. (*See, e.g.*, Ex. J-30 at 13 ("$1.2m received tax-free"; "Tax Deduction on Premium"), *id.* at 23 ("Large Tax Deductions"); J-33 ("Tax free") ("with the blessings and support of the U.S. Treasury/Internal Revenue Service"); Ex. J-22 at 2 ("There are many reasons why a business might form a captive insurance company. However, a fundamental reason is that insurance premiums are generally deductible from income."); *see also* Joint Fact Stip ¶ 22.) RMC Group furnished these marketing materials to customers. (Joint Fact Stip ¶ 25.)[3]

---

[3] Marketing materials were created by or reviewed by RMC P&C's general counsel. (Joint Fact Stip. ¶ 23.) RMC P&C's owner/President, Raymond Ankner, authorized CJA and RMC Consultants to create marketing materials on behalf RMC P&C. (*Id.*)

Fourth, RMC Group made the same statements in direct communications to customers. (*See, e.g.*, Ex. J-43 ("RMC P&C is the reinsurance pool that *gives you the diversification required* so that you[r] Company qualifies as an insurance company." (emphasis added));[4] Ex. J-44 ("It is important to note that BH Trucking is able to deduct any premium it pays to ZAZ.");[5] Ex. J-70 ("[T]he premium payment is . . . just like a normal premium payment to an Allstate or Chubb" and thus "deductible as ordinary business expenses.").)

As the Court correctly instructed the jury, § 6700 "statements" include written materials, whether those written materials were created by the promoter, provided by the promoter, or both. (Jury Instructions at 9, ECF No. 149.) *See United States v. United Energy Corp.*, 1987 WL 4787, at *4, 7, 9 (N.D. Cal. Feb. 25, 1987) (finding false statements based on sales materials and income projections). All four of these categories of written materials were either created by RMC Group, provided to customers by RMC Group, or both.

RMC Group's only defense to this element had been its specious claim that its statements were all pure legal opinions with no connection to its own

---

[4] This email was written by RMC P&C's owner/President.

[5] Exhibit J-44 was written by RMC P&C's general counsel, or someone under his authority. (Trial Day Two Tr. 39:11–17.)

captive program. (*See, e.g.*, Pls.' Mot. for Summ. J. ¶¶ 17, 20, 22–23, ECF No. 84.) But then at trial RMC Group conceded that its statements were in fact about its own captive program. (*See* Trial Day Four Tr. 93:17–94:2 ("So in no way are we trying to assert to you that the statements were not relevant to RMC Group but only to insurance generally. No, of course not. We wouldn't insult you with that kind of trickeration . . . . Of course we're talking about RMC Group.").) Thus, there was no dispute that RMC Group made statements about the tax benefits of its captive program.

    C.    <u>RMC Group knew or had reason to know that its statements were false.</u>

RMC Group's statements were false because its captive program did not qualify as "insurance" for tax purposes, so its customers could not deduct purported premium payments. *See generally Helvering v. Le Gierse*, 312 U.S. 531, 539–42 (1941) (denying deductions for arrangement that was not "insurance"); *Steere Tank Lines*, 577 F.2d 279, 279 (5th Cir. 1978) (same). RMC Group's captives did not distribute risk—a necessary element of insurance. *See Le Gierse*, 312 U.S. at 539 (establishing risk distribution as a required element of "insurance" for tax purposes); *Steere Tank Lines*, 577

F.2d at 280; *see, e.g.*, *Rsrv. Mech. Corp. v. Comm'r*, 34 F.4th 881, 904 (10th Cir. 2022).[6]

RMC Group's primary insurance of affiliated businesses did not distribute risk. (Joint Fact Stip. ¶¶ 43–44.) To gin up the appearance of risk distribution where none otherwise existed, RMC Group created an excess reinsurance arrangement under which RMC P&C issued excess reinsurance policies, which it then reinsured to all of RMC Group's captives. (*See id.*) But the excess reinsurance arrangement only applied to claims, if any ever occurred, in excess of the policy limits of each primary policy. (Joint Fact Stip. ¶¶ 34, 37, 40.) Those primary policy limits were so high that RMC Group's captives provided substantially more insurance to their own affiliated businesses than any unrelated businesses.

The parties agreed that the operative test for risk distribution was set forth in Revenue Ruling 2002-89. Under that rule, each captive satisfied risk

---

[6] One factor relevant to substantial justification is "whether the United States has lost in courts of appeal for other circuits on substantially similar issues." § 7430(c)(4)(B)(iii). *Reserve Mechanical* is the only appellate decision addressing micro-captive tax deductions, and it held that such deductions were not permitted. 34 F.4th at 912–13, 916. Moreover, the Tax Court has without exception held that various micro-captive transactions failed to qualify as "insurance" for tax deductions. *See Patel v. Comm'r*, 2024 WL 1270772, at *30 (T.C. 2024); *Swift v. Comm'r*, 2024 WL 378671, at *26 (T.C. 2024); *Keating v. Comm'r*, 2024 WL 50234, at *33 (T.C. 2024); *Caylor Land & Dev., Inc. v. Comm'r*, 2021 WL 915613, at *16 (T.C. 2021); *Syzygy Ins. Co. v. Comm'r*, 2019 WL 1559540, at *15 (T.C. 2019); *Rsrv. Mech. Corp. v. Comm'r*, 2018 WL 3046596, at *16, 21 (T.C. 2018); *Avrahami v. Comm'r*, 149 T.C. 144, 197 (2017). Indeed, no court to date has permitted deductions for premiums paid to a micro-captive insurance company.

distribution if both: (a) each captive's insurance of its affiliated business accounted for less than 50 percent of the total premiums the captive received and (b) each captive's insurance of its affiliated business accounted for less than 50 percent of the total risk borne by the captive. Revenue Ruling 2002-89, 2002-2 C.B. 984. (*See also* Joint Fact Stip. 46.) Here, there was no dispute that each captive received half of its premiums from unaffiliated businesses. But RMC Group's excess reinsurance arrangement did not come anywhere close to distributing half of the risk in RMC Group's captive program.

### 1. *RMC Group's Captives Provided Little to No Insurance to Unrelated Parties.*

Despite charging more than $50 million in excess insurance premiums,[7] RMC P&C paid no claims for the policy years 2010 through 2015 and only a single $1,914 claim for the 2016 policy year. (Joint Fact Stip. ¶¶ 47–49.) Thus, far from distributing half the risk among RMC Group's captives, the excess reinsurance arrangement insured only negligible risk. (Trial Day One Tr. 169:3–12.) In fact, RMC Group's own expert testified that he "absolutely" would have expected to see more than $2,000 of pooled claims in RMC Group's excess reinsurance arrangement. (Trial Day Three Tr. 162:21–22.)

---

[7] RMC Group's customers paid "well north of a hundred million dollars" in captive program premiums. (Trial Day One Tr. 188:1–11.) Half of those premiums were circulated through RMC P&C for purported excess insurance. (Joint Fact Stip. ¶ 37.)

RMC Group's minuscule claims payments over seven years, for dozens of customers/captives, each issuing a number of insurance policies, representing more than $50 million of premiums, is legally incompatible with risk distribution. Risk distribution presumes an insurer covers so many independent risks that it can rely on the law of large numbers to "smooth[] out losses to match more closely its receipt of premiums." *Clougherty Packing Co. v. Comm'r*, 811 F.2d 1297, 1300 (9th Cir. 1987). But RMC P&C's claim payments did not "smooth out" to its receipt of premiums; instead, they smoothed out to *zero*.

As a result, courts have consistently rejected the possibility of sufficient risk distribution when claim payments were not actually made to any unrelated parties over a large sample. *See, e.g.*, *Rsrv. Mech.*, 34 F.4th at 912 ("Because Reserve's reinsurance of PoolRe's quota-share arrangement did not create any meaningful risk for Reserve, Reserve did not satisfy even the distribution threshold . . . ."); *Caylor Land*, 2021 WL 915613, at *11–12 ("Consolidated had *zero* risks from unrelated parties."); *accord Steere Tank Lines*, 577 F.2d at 280 (holding no risk distribution where "Steere's losses were to be paid only out of a fund made up of premiums Steere had paid"); *United States v. Crithfield*, 2017 WL 3412208, at *7 (M.D. Fla. July 12, 2017) ("If the insured retains the risk of his own loss, the arrangement is self-

insurance, which is not the equivalent of insurance." (cleaned up)), *aff'd sub*

*nom.*, *United States v. Donaldson*, 767 F. App'x 903 (11th Cir. 2019).

>    2.    *Actuarial Analyses all Showed RMC Group's Captive*
>          *Program Failed the Revenue Ruling's Test.*

The resulting lack of claims could not have been surprising: all of

actuarial evidence at trial showed that RMC Group should have expected the

losses in its excess reinsurance arrangement to fall well below half of the

total risk in the program.

Ankner testified than any insurance company would always want an

actuarial opinion to support its pricing. (Trial Day Two Tr. 9:16–22, 10:5–8,

13:23–24.) Yet for the first three years of its program, RMC Group had no

actuarial basis to suggest that more than half of the risk its captives insured

was from unrelated parties through the excess reinsurance arrangement.

(Exs. J-46, J-47; Trial Day Two Tr. 14:6–11.)

Even when RMC Group finally consulted an actuary, the result was the

opposite of what they wanted. In 2013, actuary Marn Rivelle reviewed the

program to make sure that RMC P&C was assuming *no more than* half of the

total risks in the program. (Trial Day One Tr. 221:20–222:7, 224:18–25,

257:3–5; Ex. J-48 at 3 ("The Company has commissioned this actuarial report

to review the *adequacy* of the generic pricing . . . ." (emphasis added));

Ex. J-49 at 3 (same).) In fact, Rivelle concluded that RMC Group could have

allocated 15 percent more of the policy limits to the excess policies and *still* they would account for *less than half* of the total risk. (Trial Day One Tr. 255:3–19, 257:10–15, 259:12–18.) In other words, Rivelle's calculations implied that RMC Group's excess reinsurance arrangement involved *less than* half of the total risk its captives insured. Thus, it did not comply with the Revenue Ruling's requirement for risk distribution. In fact, Rivelle's calculations actually showed that the excess reinsurance arrangement accounted for only about 15–25 percent of the expected losses in RMC Group's captive program. (Trial Day One Tr. 230:13–232:3.) Thus, according to Rivelle's analysis, only about 15–25 percent of each captive's risk was distributed among unrelated parties, and the captives all failed to satisfy the Revenue Ruling's test for risk distribution.[8]

Finally, in 2015, RMC Group engaged the actuarial firm Milliman to evaluate its policy limits split. (Trial Day Two Tr. 57:22–58:4.) Milliman's report concluded that, to account for half of the total risk, RMC Group's excess reinsurance arrangement needed to attach at 31.2 percent of the total

---

[8] Rivelle also identified "selected" ILFs, which resulted in a 50-50 split of premiums between the primary and excess layers. (Trial Day One Tr. 232:14–234:7.) But all three actuaries testified that the 50-50 split was "selected" by RMC Group, not by Rivelle's calculations. (Trial Day Three Tr. 171:24–172:4 (RMC Group's expert's testimony that "I think 'selected' here means: What did RMC select? Not: What did Mr. Rivelle select?"); *id.* at 47:14–48:16; Trial Day One Tr. 232:19–23, 234:4–18, 235:21–25, 238:17–239:2.)

policy limits. (Ex. J-11 at 2.) But RMC P&C's excess policies did not attach until 40 percent of total policy limits. (Joint Fact Stip. ¶ 40; Trial Day Two Tr. 138:21–146:12.) So Milliman's report—just like *all* of the other actuarial calculations—shows that the excess reinsurance program was not covering enough of the policy limits to account for more than half of the risks of RMC Group's captive program.

### 3. *RMC P&C's Financial Statements Show RMC Group Knew they Failed the Revenue Ruling Test.*

RMC Group knew that less than half of the risk in its captive program was in its excess reinsurance arrangement. All of the risk in the excess reinsurance arrangement flowed through RMC P&C as the excess insurer. (Joint Stip. ¶ 31.) RMC Group's own financial statements for RMC P&C showed incurred losses of only four percent of premiums. (Trial Day Three Tr. 52:5–6; *see* Exs. J-90–J-95.) Incurred losses include both claims that have already been paid (here, there were none) and the insurance company's expected claim payments. (*Id.* at 50:15–20.)[9] Because RMC Group knew that the risk in the excess policies was only four percent of their premiums (and the excess premiums were only half of the captives' total premiums), it knew

[9] RMC P&C's incurred losses figure correlated to RMC Group's other projections of relatively small losses in its captive program. (*See, e.g.*, Exs. J-38, J-75–J-77 (all projecting 4 percent expected losses).) Small losses would be unlikely to ever reach the excess policies' attachment point, and therefore provide no risk distribution.

that the captives were not assuming more than half of their risk from unrelated parties.

4.      *RMC Group Relied on a Mistake of Law, which Is No Excuse to § 6700 Penalty Liability.*

RMC Group contends that it does not matter that it projected the losses in its excess reinsurance program coverage to be too small to satisfy the Revenue Ruling. (Trial Day Two Tr. 155:24–156:2 ("[W]e didn't ask at the time for Mr. Rivelle to opine on the 40/60 split of the risk. That, again, was based on my understanding of the requirement of the revenue ruling."); *see also* Trial Day Three Tr. 227:20–24 ("I was reviewing [the Revenue Ruling] from the perspective of a lawyer, not an actuary."); *see also* Trial Day Two Tr. 14:6–17 (Ankner did not consult an actuary because Jeff Bleiweis was his "expert").) Instead, RMC Group's general counsel confirmed that RMC Group's belief regarding allocation of the relative primary and excess policy limits—its attempt to distribute risk—was actually based, not any actuarial analysis at all, but on his legal conclusion that every dollar of policy limits counted as the same amount of "risk." (Trial Day Three Tr. 237:18–238:6 ("And like I said at the beginning, I'm not an actuary and I can't give you an actuarial definition of anything. But I still stand by my testimony that *from a legal perspective*, I thought, and still think, that the limit of liability does

represent the risk. . . . And that's *how we intended* to comply with the revenue ruling." (emphasis added)).)

Bleiweis's legal analysis was wrong: each dollar of higher-level excess policy limits implicates far less risk than first-dollar coverage. Indeed, relatively small premiums are a hallmark indication of excess coverage. *See, e.g.*, *Aetna Cas. & Sur. Co. v. United Servs. Auto. Ass'n*, 676 F. Supp. 79, 81 (E.D. Pa. 1987) ("I conclude that the Aetna excess policy is an 'umbrella policy'. It provides the named insured with extended coverage for a low premium . . . ."). And courts have consistently applied this concept in the microcaptive context. *See, e.g.*, *Patel*, 2024 WL 1270772, at *28 (criticizing the pricing of policies with "excess policy provisions despite high premiums that are indicative of primary policies"); *Syzygy*, 2019 WL 1559540, at *11 ("During each year in issue at least half of HT & A's captive program policies were for excess coverage, which should result in a lower rate-on-line."); *Avrahami*, 149 T.C. at 186–87 (criticizing premium pricing because "Pan American participants also paid the same rate . . . even though the TRIP policy was written as an excess-coverage policy"). In fact, all three actuaries testified that policy limits do not define "risk" (as Bleiweis assumed). (Trial Day Three Tr. 31:22–33:6 ("Q. Do you agree with his statement that because the policy limits are split 40/60, the risk in the excess layer versus the primary layer is split 40/60? A. No, not at all. It's not even close."); Trial Day

Three Tr. 205:2–206:5 (RMC Group's expert's testimony that "I agree with the notion that a 40/60 split in policy limits does not mean a 40/60 split in risk."); Trial Day One Tr. 260:22–261:1; *see also id.* at 260:6–12 (distinguishing risk and policy limits); Trial Day Three Tr. 30:19–23 ("I want to stress that it's 40 percent of the policy limit, not 40 percent of the claim.").)

Because RMC Group's beliefs regarding distribution of risk in its captive program were based on Bleiweis's mistake of law, RMC Group had reason to know that its captive program did not qualify for tax benefits. The Court correctly instructed the jury that promoters, like RMC Group, are deemed to have correct knowledge of the law governing the benefits they promote. (Jury Instructions at 11.) *See United States v. Miner*, 2014 WL 7361829, at *7 (M.D. Fla. Nov. 19, 2014) ("[T]he bases of Defendant's programs are legally untenable. Therefore, regardless of his actual knowledge, Defendant 'had reason to know' that his statements were false."). Thus, because the "reason" RMC Group did not "know" that its captive program did not qualify for tax benefits was Bleiweis's mistake of law, RMC Group had reason to know that its statement were false.

D.  The tax benefits RMC Group promised were material.

The availability of tax deductions as part of a plan or arrangement is per se material. *United States v. Benson*, 561 F.3d 718, 724 (7th Cir. 2009) ("There is no matter more material to the sale of a tax avoidance package

than whether the package effectively allows customers to avoid taxes."); *United States v. Campbell*, 897 F.2d 1317, 1320 (5th Cir. 1990) (holding both "statements directly addressing the availability of tax benefits and those concerning factual matters that are relevant to the availability of tax benefits" are material). Therefore, RMC Group's false statements were per se material.

Indeed, RMC Group conceded that "any business owner" would "be interested in" the tax deductions RMC Group promised. (Trial Day Four Tr. 92:25–93:5 ("[I]t is a benefit that is tax[-]deductible. Of course it is. And any business owner is going to be interested in that."); *see also* Ex. J-22 at 2 (statement by RMC Group general counsel that deductions for purported premium payments was "a fundamental reason" "why a business might form a captive insurance company").)

## II.   RMC Group Unreasonably Protracted Litigation.

While, as shown above, the United States' position was substantially justified, RMC Group took baseless positions and actions. RMC Group has no right to any award of fees for the portion of the litigation RMC Group unreasonably protracted. § 7430(b)(3).

A.   RMC Group's protective-order motion was baseless.

RMC Group protracted the litigation by filing a baseless motion for a protective order (ECF No. 44) seeking to preclude the United States from

taking any discovery from its captive customers. RMC Group ultimately

obtained no relief on its motion. (Order, ECF No. 68.) Indeed, the only result

of RMC Group's motion was the parties' wasted efforts in briefing (*see* ECF

Nos. 44, 45, 47, 48, 55, 56, 57, 58, 59, 60, 61) and attending a hearing (*see*

ECF No. 64, 66). In fact, RMC Group's disingenuous position was exposed at

trial when *they* designated about 52 pages of customer deposition testimony

(Pretrial Statement, Ex. A at 1–2, 7, ECF No. 121-1) and highlighted

customer testimony in *their* closing argument. (Trial Day Four Tr. 96:25–

98:13.)

B. <u>RMC Group repeated the frivolous argument that the falsity of its statements was not at issue.</u>

In its motion for a protective order and elsewhere, RMC Group

repeatedly argued that the falsity of its statements was not at issue. (*See,*

*e.g.*, RMC Group Mot. for PO ¶¶ 15–16 (arguing that documents relevant to

whether RMC Group's captive program qualified as "insurance" do not

"pertain to the statements that may have been made by Plaintiffs"); RMC

Group Reply in Supp. of Mot. for PO at 3, ECF No. 47 (arguing that

"prov[ing] that the captives formed by Plaintiffs' clients are not valid

insurance companies" "is simply not what this case is about"); RMG Group

Resp. to U.S. Obj. at 6, ECF Nos. 59–60 (arguing that "whether a particular

customer can take a deduction" "has no bearing on whether the Plaintiffs

made . . . statements"); RMC Group Mot. to Exclude Expert Testimony at 9, 11–12, 15–17, ECF No. 82 (arguing that expert insurance testimony is irrelevant because the only question is a legal interpretation of the Tax Code); *see also* Trial Day One Tr. 102:15–16.) This argument was frivolous, as § 6700 liability turns, among other things, on whether the statements were false. § 6700(a)(2)(A). So the Court repeatedly rejected RMC Group's argument. (*See, e.g.*, Order at 4, ECF No. 54 ("Whether the captive[s] . . . are bona fide insurance companies and entitled to tax-treatment as such is relevant to whether Ankner knew or should have known the statements about the plans were false or fraudulent."); Order at 2–3, ECF No. 68; Op. & Order at 8, ECF No. 112 ("The Court finds that the captive insurance program is clearly relevant to both the case in general and to the issue as formulated by Plaintiffs in particular."). RMC Group should not be rewarded for repeating their baseless argument with reimbursement of the fees they unnecessarily incurred doing so.

C.    RMC Group unreasonably drew out its discovery responses.

RMC Group protracted discovery by failing to provide timely responses to discovery requests. For example, on March 9, 2022, the United States

served document requests numbered 13 through 18 on Raymond Ankner.[10] (ECF No. 83-50.) Ankner failed to respond to Requests Nos. 15 and 18 until August 21, 2023 (ECF No. 83-51)—more than *seventeen months* later.[11] Similarly, the United States served its first set of interrogatories on RMC P&C on June 21, 2022, but RMC P&C did not provide a meaningful response until September 13, 2022. Again, RMC Group should not be rewarded with fees incurred creating unneeded and unjustified disputes and delays.

## III. RMC Group Failed to Adequately Establish Net Worth.

To be prevailing parties, CJA, RMC P&C, and RMC Consultants must have met the requirements of 28 U.S.C. § 2412(d)(2)(B). *See* § 7430(c)(4)(A)(ii). RMC Group's declaration fails to establish this prerequisite because (a) it does not contain the required financial information and (b) it covers the wrong time.

### A. RMC failed to submit financial evidence.

Courts typically reject § 7430 motions for fees without detailed financial data showing that the party meets the net worth requirement of § 2412(d)(2)(B). *See, e.g.*, *Shooting Star Ranch, LLC v. United States*, 230

---

[10] While RMC Group is not seeking fees on behalf of Ankner, they propose to do so by removing "his pro rata share." (RMC Group Mot. ¶ 5 n.1.) Thus, (a pro rata portion of) fees for responding to Ankner's discovery are included in their request.

[11] In in interim, counsel for RMC Group took several—sometimes conflicting—positions about Ankner's responses. (*See, e.g.*, ECF Nos. 109-2, 83-46.)

F.3d 1176, 1177 (10th Cir. 2000) (holding letter from a certified public accountant stating plaintiff's net worth was between $1.5 and $1.8 million was insufficient for the plaintiff to carry his burden to establish net worth under § 2412(d)); *Jaxma Greenhouses, Inc. v. Vilsack*, 2022 WL 4229336, at *9 (M.D. Fla. July 11, 2022) (affirming rejection of fees motion that was "conclusory, did not fully disclose Jaxma's assets and liabilities, and was not sufficient for the NAD to ascertain and verify Jaxma's net worth"), *adopted*, 2022 WL 3054011 (M.D. Fla. Aug. 3, 2022); *Lion Raisins, Inc. v. United States*, 57 Fed. Cl. 505, 511 (2003) ("The failure to submit information consistent with generally accepted accounting principles is fatal to plaintiff's application.").

Here RMC Group submitted no financial data or evidence at all. Instead, RMC Group only offered a conclusory, non-contemporaneous, and self-serving declaration of their general counsel, which purportedly contained "a fair estimate" of each corporate Plaintiff's net worth. RMC Group's declaration does not come anywhere close to the sort of detailed financial evidence courts typically demand to establish net worth. The Court should reject RMC Group's attempt to slip past this statutory requirement.

B.    <u>RMC Group's conclusory declaration does not even allege the entities' net worth at the time this suit was filed.</u>

The net worth requirement applies at the time the civil action is filed. § 2412(d)(2)(B); *see also Madan v. United States*, 871 F. Supp. 125, 127 (N.D.N.Y. 1994). RMC Group has provided no evidence of any entity's actual net worth at the time the suit was filed. (*See* Decl. of J. Bleiweis ¶ 6, ECF No. 159-1 (providing only a *current* estimate of the entities' net worth). So RMC Group has failed to establish the entities' net worth at the relevant time.

## Conclusion

The Court repeatedly held that there was sufficient evidence to find RMC Group was liable for § 6700 penalties. The evidence at trial showed that RMC Group was liable for § 6700 penalties. The mere fact that the jury concluded otherwise does not suggest that the United States' position was not, at a minimum, substantially justified. So RMC Group is not entitled to fees under § 7430. But even if the United States' position were not substantially justified, RMC Group repeatedly and unreasonably protracted litigation and has failed to establish the applicable net worth requirement. The Court should deny RMC Group's motion.

//

//

Date: May 8, 2024

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

_/s/ Gregory L. Mokodean_
GREGORY L. MOKODEAN
OH Bar No. 0086880
Tel. 202-307-6554
Gregory.L.Mokodean@usdoj.gov
GREGORY E. VAN HOEY
MD Bar No. 0312170330
Gregory.Van.Hoey@usdoj.gov
Tel. 202-307-6391
VIRGINIA GIANNINI
NY Bar No. 5760715
Virginia.Giannini2@usdoj.gov
Tel. 202-307-6404
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7328
Washington, DC  20044
Fax 202-514-6770