```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

RAYMOND   ANKNER,   CJA   AND
ASSOCIATES,     INC.,     RMC
PROPERTY & CASUALTY, LTD.,
and RMC CONSULTANTS, LTD.,

      Plaintiffs,

v.                              Case No:  2:21-cv-330-JES-NPM

UNITED STATES OF AMERICA,

      Defendant.

_____

CJA AND ASSOCIATES, INC.,

      Plaintiff,

v.                              Case No:  2:21-cv-331-JES-NPM

UNITED STATES OF AMERICA,

      Defendant.

_____

RMC PROPERTY & CASUALTY,
LTD.,

      Plaintiff,

v.                              Case No:  2:21-cv-333-JES-NPM

UNITED STATES OF AMERICA,

      Defendant.

_____

RMC CONSULTANTS, LTD.,

      Plaintiff,

v.                              Case No:  2:21-cv-334-JES-NPM

UNITED STATES OF AMERICA,

      Defendant.

_____

### OPINION AND ORDER

This matter comes before the Court on Plaintiffs' Motion on Entitlement to Reasonable Litigation Fees/Costs (Doc. #159), timely filed on April 23, 2024. The United States filed an Opposition to RMC Group's Motion for Attorney Fees and Costs (Doc. #162) on May 8, 2024. For the reasons set forth below, the Court finds plaintiffs are not entitled to litigation fees and costs under 26 U.S.C. § 7430(a), and therefore the motion is denied.

### I.

In the Amended Complaint (Doc. #30), plaintiffs Raymond Ankner (Ankner), CJA and Associates, Inc. (CJA), RMC Property & Casualty Ltd. (RMC P&C), and RMC Consultants, Ltd. (RMC Consultants) sought a judgment against the United States of America (the United States) finding that prior impositions of penalties pursuant to 26 U.S.C. § 6700 were erroneous and that the portions of those penalties paid by them as a pre-condition to filing their lawsuits must be refunded. The United States had imposed penalties against plaintiffs for promoting the tax benefits of their captive program as "insurance" when, in the United States' view, the program did not qualify as insurance for tax purposes.

- 2 -

The United States filed a Counterclaim (Doc. #34) seeking payment of the unpaid portions of the assessed penalties.

The case proceeded to trial before a jury.  The jury returned a nine-page verdict (Doc. #151) finding that the United States did not prove its § 6700 claims against any plaintiff for any of the relevant tax years. The jury determined that plaintiffs were not liable for any penalties and that the United States must refund all penalties paid by plaintiffs plus statutory interest. (Id.) Judgment and an Amended Judgement were entered against the United States.  (Docs. #154, #156.)  No appeal was filed.

## II.

Pursuant to 26 U.S.C. § 7430(a), all plaintiffs except Ankner[1] (collectively the RMC Group) seek to recover reasonable litigation costs, including attorney fees and costs, as prevailing parties in the court proceeding.  In general, § 7430(a) allows a prevailing private party to obtain a judgment for the "reasonable litigation costs"[2] of a court proceeding brought by or against the United

---

[1] See Doc. #159, n.1.

[2] "Reasonable litigation costs" includes court costs, reasonable expenses for expert witness, the reasonable cost of any "study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case", and reasonable attorney fees not to exceed $125 an hour adjusted each year for cost of living adjustments, "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate."  26

States concerning federal taxes. 26 U.S.C. § 7430(a)(2). This provision waives sovereign immunity for such litigation costs and attorney fees incurred. <u>Jove Eng'g, Inc. v. I.R.S.</u>, 92 F.3d 1539, 1560 (11th Cir. 1996). "Congress enacted § 7430 to deter abusive actions or overreaching by the IRS and to enable taxpayers to vindicate their rights regardless of their economic circumstances." <u>Cooper v. United States</u>, 60 F.3d 1529, 1530 (11th Cir. 1995) (citation omitted).

Certain restrictions limit the ability of a taxpayer to recover reasonable litigation costs under this statute. The Court discusses the relevant requirements below.

**A. Net Worth Requirements**

"Prevailing party" status requires the taxpayer to satisfy the net worth eligibility requirements imposed by 28 U.S.C. § 2412(d)(2)(B). <u>See</u> 26 U.S.C. § 7430(c)(4)(ii). Section 7430 "supplanted the Equal Access to Justice Act for the award of attorney's fees and costs in proceedings to which § 7430 is applicable." <u>In re Brickell Inv. Corp.</u>, 922 F.2d 696, 700 (11th Cir. 1991). <u>See</u> 28 U.S.C. § 2412(e) ("The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1986 applies.").

---

U.S.C. § 7430(c)(1).

A "party" is limited to those with a net worth which does not exceed certain amounts:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed….

28 U.S.C. § 2412(d)(2)(B). Net worth is determined by subtracting total liabilities from total assets. City of Brunswick, Ga. v. United States, 849 F.2d 501, 503 (11th Cir. 1988).

The United States argues that the RMC Group has failed to adequately establish net worth because its supporting affidavit (1) does not contain specific and detailed financial information, and (2) covers the wrong time period. According to the United States, courts typically require detailed financial data showing the net worth requirement is satisfied. Additionally, the United States asserts that the RMC Group has provided no evidence of actual net worth at the time the suit was filed, only estimates of current net worth. (Doc. #162 at pp. 25-27.) Despite its multi-year audit, the United States does not suggest that the net worth of the RMC Group entities exceeded the net worth threshold. Rather, the United States only asserts that the RMC Group has not sufficiently shown their net worths did not do so.

Plaintiffs assert through counsel that "[a]t the time of filing in April 2021, RMC P&C's approximate net worth was approximately $432,458.00. RMC Consultants' net worth was approximately ($4,366,966.00) and CJA's net worth was approximately (3,124,303.00). At no time did any of the Plaintiffs have more than 500 employees." (Doc. #159 at 2.) Counsel's signature certifies that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery" under Fed. R. Civ. P. 11(b)(3). Counsel's allegations are also supported by the affidavit of the General Counsel of the RMC Group. (Doc. #159-1, ¶¶ 5-6.) The General Counsel swears that "[a]t the time of filing this action, none of the Plaintiffs had a net worth exceeding $7,000,000.00 and all business entities had less than 500 employees." (Id. at ¶ 5.) The affidavit then sets forth estimates of the current net worth of each entity, none of which are close to the $7 million threshold. (Id. at ¶ 6.)

The Court is satisfied from this that the RMC Group has reliably shown that the entities did not exceed the net worth limitation at the relevant time period. The United States' argument to the contrary is rejected.

**B. Exhaustion of Administrative Remedies**

A putative prevailing party must exhaust the administrative remedies available within the Internal Revenue Service (IRS). 26 U.S.C. § 7430(b)(1).  Plaintiffs assert that they did so in this case, voluntarily participating in a "years-long investigative audit by the IRS," protesting the resulting imposition of penalties, and paying the required fifteen percent of the penalties as a precondition to filing this lawsuit.  (Doc. #159, ¶ 3.)  No further administrative mechanism has been identified, and the United States does not challenge plaintiffs' assertion that administrative remedies have been exhausted.  (Doc. #162.) Indeed, prior to trial, the United States stipulated that "[p]laintiffs satisfied the administrative prerequisites to filing this refund suit." (Doc. #137, ¶ 76.)  The Court finds that the RMC Group did exhaust its administrative remedies available with the IRS.

**C. Unreasonable Protraction of Court Proceeding**

The United States argues at some length that even if the RMC Group is a prevailing party, it will have no right to any award of fees for the portions of the litigation it unreasonably protracted by taking baseless positions and actions.  (Doc. #162, pp. 22-25.) More specifically, the United States argues that RMC Group's protective order motion was baseless, that the RMC Group repeated the frivolous argument that the falsity of its statements was not

at issue, and that the RMC Group unreasonably drew out its discovery responses.  (Id.)

It is certainly true that reasonable litigation costs may not be awarded "with respect to any portion of the . . . court proceeding during which the prevailing party has unreasonably protracted such proceeding."  26 U.S.C. § 7430(b)(3).  The Court finds it unnecessary to resolve this issue, however, since it goes to the amount of fees to be awarded, and not the issue of entitlement to such litigation costs.  See Local Rule 7.01, United States District Court, Middle District of Florida (setting up a bifurcated procedure to determine entitlement to and amount of attorney fees and expenses.)  As discussed below, the government's position was substantially justified, thereby precluding RMC Group's status as a prevailing party.

**D. Prevailing Party Generally**

To recover under 26 U.S.C. § 7430, a taxpayer must prove that it is a "prevailing party".  The general rule is that a taxpayer is the prevailing party if it meets either of two requirements: it has substantially prevailed with respect to either (1) the amount in controversy, or (2) the most significant issue or set of issues presented.  26 U.S.C. § 7430(c)(4)(A)(i).  Where the final determination is made by the court, the determination of whether

a party is a "prevailing party" is made by the Court.   26 U.S.C. § 7430(c)(4)(C)(ii).

It is undisputed that the civil actions in these cases are court proceedings which were brought against the United States in connection with the determination, collection, or refund of a tax penalty under Title 26. It is also undisputed that the RMC Group substantially prevailed in the court proceeding with respect to both the amount in controversy and the most significant issue or set of issues presented in the case.   Therefore, plaintiffs qualify as prevailing parties under 26 U.S.C. § 7430(a), unless another statutory provision requires otherwise.

**E. Substantially Justified Position of United States**

Section 7430(c)(4)(B) provides an exception to the general prevailing party definition.  "A party shall not be treated as the prevailing party ... if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B).

The term "position of the United States" means in relevant part "the position taken by the United States in a judicial proceeding to which subsection (a) applies...."   26 U.S.C. § 7430(c)(7)(A).  "A position that is 'substantially justified' is one that is justified to a reasonable degree that could satisfy a reasonable person or that has a reasonable basis in both law and fact."  Wilkes v. United States, 289 F.3d 684, 688 (11th Cir.

2002) (citing In re Rasbury, 24 F.3d 159 (11th Cir. 1994)).  The "position can be justified even though it is not correct" and "it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  Pierce v. Underwood, 487 U.S. 552, 566 n.2 (1988).  Additionally, the outcome of the underlying litigation is not dispositive as to whether the government's position was substantially justified. Id. at 569.  "Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."  Maddow v. Procter & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997) (citing Pierce at 565).  Although the result of the proceeding may be considered as evidence, "the court considering an attorney's fees application must independently analyze the Government's position."  Porter v. Heckler, 780 F.2d 920, 922 (11th Cir. 1986).  Whether the government's litigation position was substantially justified is reviewed for abuse of discretion.  Wilkes, 289 F.3d at 688 (citing In re Rasbury, 24 F.3d at 165-68).

**(1)  Overview**

There may be tax benefits from transactions involving small insurance companies, especially if the small insurer is a captive insurer, sometimes referred to as a "micro-captive."  As the Supreme Court has stated:

> A micro-captive transaction is typically an insurance agreement between a parent company and a "captive" insurer under its control. The [Internal Revenue] Code provides the parties to such an agreement with tax advantages. The insured party can deduct its premium payments as business expenses. And the insurer can exclude ... those premiums from its own taxable income, under a tax break for small insurance companies. [] The result is that the money does not get taxed at all.

CIC Servs., LLC v. IRS, 593 U.S. 209, 213 (2021) (citations omitted).  Such tax benefits and incentives have led micro-captive transactions to come under scrutiny because of "their potential for tax avoidance or evasion."  CIC Servs., 593 U.S. at 213.  Such scrutiny was visited upon Ankner and the RMC Group.

The IRS began an administrative audit of Ankner and the entities comprising the RMC Group to determine whether penalties under 26 U.S.C. § 6700 were appropriate for their promotion of a tax shelter involving their captive insurance program during calendar years 2010 through 2016.  By letter dated October 19, 2020, the IRS assessed penalties pursuant to § 6700 against CJA for years 2010, 2011, 2012, 2014, 2015, and 2016; against RMC P&C for 2010 through 2016; and against RMC Consultants for year 2011 through 2016.[3]  (Doc. #30 at ¶ 18; Doc. #151.)  The entities paid the required percentage of the amounts, protested the penalties,

---

[3] The Court omits mention of penalties assessed against Ankner individually since he is not a party to the current motion.

and sought a refund of such payments.  (Id. at 20.)  On March 25, 2021, the IRS disallowed their claims for refunds.  (Id. at 21.)

On April 23, 2021, Ankner and the RMC Group entities filed four lawsuits against the United States.  These cases were consolidated (Doc. #22) and proceeded on the operative Amended Complaint (Doc. #30).  The Amended Complaint asserted that the law and facts did not support the imposition of any penalty under § 6700 and sought a refund of monies paid pursuant to the penalty assessments.

The United States filed a Counterclaim (Doc. #34, pp. 8-15) seeking full payment of the § 6700 penalties.  The Counterclaim clearly set forth the United States' position in the case:

> 4. A captive insurance company is an insurance company that insures the risks of companies related to it by ownership.
>
> 5. In the present case, Counterclaim Defendants use contracts issued by micro-captive companies or entities that are not operating as legitimate insurance companies as a means to improperly reduce their clients' aggregate taxable income.
>
> 6. Under the contracts, taxpayers make payments to captive companies or entities organized by the Counterclaim Defendants and treat the payments as insurance premiums. The taxpayers then deduct the payments from their taxable income as ordinary and necessary expenses under 26 U.S.C. § 162(a).
>
> 7. At the same time, the captive companies or entities improperly elect under § 831(b) of the Internal Revenue Code to be taxed only on their investment income and exclude the so-

called premium income from their taxable income.

8. Neither party to these captive transactions pays tax on the micro-captive premiums based on the false or fraudulent premise that the captive companies or entities are entitled to compute their taxes as operating insurance companies.

9. To qualify to compute income as an insurance company under § 831(b), more than half of the captive company's business must involve issuing insurance or annuity contracts or the reinsuring of risks underwritten by insurance companies.

10. In the present case, however, the captive transactions at issue do not constitute insurance, and the purchasers of the purported captive insurance are not entitled to deduct the payments they made to the captive companies or entities.

11. In addition, the purported micro-captive insurance companies formed or organized by the Counterclaim Defendants do not qualify to be taxed as insurance companies.

12. The captive companies or entities do not sufficiently distribute risk and they do not provide insurance in its commonly accepted sense.

13. In the present case, only .0057% of the total premiums paid to the captive entities were paid out in claims during the relevant time period.

14. During that same time, only 38 claims were filed resulting in the total amount paid out of only $422,702.11. The total amount of premiums paid to the captive companies or entities was $74,003,517.02.

15. During the tax years 2010 through 2016, the Counterclaim Defendants organized, or assisted in the organization of, and sold

interests in purported micro-captive insurance companies.

16. The Counterclaim Defendants also marketed their micro-captive arrangement as a tax advantaged deposit arrangement rather than an insurance product.

17. The marketing efforts of the Counterclaim Defendants and the captive companies or entities demonstrate their focus on:

a. income and estate tax benefits;

b. investment returns and wealth accumulation; and

c. asset protection from potential creditors.

18. As part of their marketing efforts, the Counterclaim Defendants attend conferences hosted by trade groups of pension and retirement plan brokers to promote their captive insurance arrangement as a product that the brokers could sell to their clients.

19. Section 6700 imposes a penalty on persons who organize (or assist in the organization of), or participates (directly or indirectly) in the sale of any interest in, an entity, plan or arrangement and makes or furnishes or causes another person to make or furnish a statement with respect to the allowability of tax deductions or credits, the excludability or any income, or the securing of any other tax benefit by reason of participating in a plan or arrangement which the person knows or has reason to know is false or fraudulent as to any material matter.

20. The micro-captive arrangement operated by the Counterclaim Defendants is a plan or arrangement within the meaning of § 6700.

21. The Counterclaim Defendants made or furnished, or caused others to make or furnish, false or fraudulent statements that claimed the transactions promoted by the

Counterclaim Defendants met the requirements for being treated as insurance for federal tax purposes thus providing significant federal tax savings. Because the entities created as part of the micro-captive arrangement did not qualify as insurance companies, these statements were false.

22. The statements the Counterclaim Defendants made were also material because they would have had a substantial impact on the decision-making process of a reasonably prudent investor.

24. The Counterclaim Defendants knew or had reason to know that their statements about the purported tax benefits of the captive transactions they were promoting were false or fraudulent.

(Doc. #34, Counterclaim at ¶¶ 4-24.)

Prior to trial, the United States summarized its "Statement of the Action" as follows:

Raymond Ankner and three companies he owned, CJA and Associates, Inc., RMC Property & Casualty, Ltd., and RMC Consultants, Ltd. organized, or assisted in organizing, so-called captive insurance companies. In general, a captive insurance company is an insurance company that insures the risks of companies related to it by ownership. Businesses paid insurance premiums, up to $1.2 million per year, to the captive insurance companies Plaintiffs managed, and those businesses took tax deductions based on those premium payments. The parties dispute whether those tax deductions were legal. The United States contends that Plaintiffs are liable for penalties for alleged false statements they made about taking the tax deductions. Plaintiffs contend that they are not liable for these penalties. Plaintiffs Raymond Ankner and CJA and Associates, Inc. also contend that, even if they are liable for penalties, they are liable in smaller amounts.

(Doc. #136, p. 2.)   The parties also agreed upon an extensive pretrial Joint Stipulation of Facts and Law. (Doc. #137.)   A jury returned verdicts in favor of all Plaintiffs.  (Doc. #151.)

### (2)   Substantial Justification for Government Position

The United States does not dispute that it has the burden of proof to establish that its positions at the judicial proceeding were substantially justified.  The United States argues that "the evidence at trial was far more than enough to substantially justify the United States' position under the governing law."  (Doc. #162, p. 4.)

### (a)   Court's Prior Rulings

The United States begins by referring to two of the Court's prior orders.  (Doc. #162, pp. 5-7.)  On February 29, 2024, the Court issued an Opinion and Order (Doc. #113) denying plaintiffs' summary judgment motion, noting that the "record contains ample evidence from which a reasonable jury could find for the United States."  (Doc. #113, p. 12.)  The United States also refers to the Court's denial of plaintiffs' oral motion at trial for judgment as a matter of law.  The Court stated that there was ample evidence presented at trial from which a reasonable jury could find the United States had established the required elements of § 6700. (Doc. #147, pp. 290-291.)

While the Court may certainly consider the record evidence at the times of these rulings, neither determination resolves the

issue now before the Court.  Neither summary judgment nor judgment as a matter of law involves the same legal standard which governs whether a position was substantially justified.  Rather, the Court must make an independent determination of that issue.  Porter v. Heckler, 780 F.2d at 922.

**(b)  Jury Verdicts**

Plaintiffs argue that "whether the position of the IRS was 'reasonable' was put to the ultimate test in this case in front of the eight (8) reasonable people who formed the jury, and they found it to be severely lacking."  (Doc. #159, at ¶ 26.)  But the jury was not called upon to decide whether the government's position was reasonable, as demonstrated by the jury instructions setting forth the elements the government must prove.  (Doc. #149, pp. 6-7.)  The verdicts were not a referendum on the reasonableness of the government's position.  While the Court may consider the jury verdicts, they are not determinative of the decision the Court is now called upon to make.

**(c)  Evidence At Trial**

Both sides rely upon the evidence presented at trial, although they draw different conclusions from that evidence.  The United States argues that "the evidence at trial went well beyond showing a substantial justification," and that it "showed that RMC Group's promotion of its captive insurance program satisfied each of these [§ 6700] elements."  (Doc. #162, pp. 6 & 7.)  The United States

further argues that "the actual evidence amply demonstrates substantial justification" (id. at 8) and goes on to outline that evidence as to each of the § 6700 elements (id. at 8-22).

The undersigned has the benefit of having presided over the case from its inception in district court, including presiding over the jury trial. After considering the totality of the record, the Court finds that the United States has proven that its positions were substantially justified. This includes its key position that the captive program did not qualify as "insurance" for tax purposes because there was no risk distribution, so its customers could not deduct their "premium" payments. (Doc. #162 at pp. 9, 12-13.) It has long been established that insurance involves risk-shifting and risk-distributing, Helvering v. Le Gierse, 312 U.S. 531, 539-40 (1941), and the United States' position that at least risk-distribution was missing in this case was substantially justified by the evidence throughout the pendency of the case. The United States' inability to convince the jury of the merits of its case does not change the substantial justification of its positions.

The Court has considered plaintiffs' arguments to the contrary but is not convinced. Plaintiffs begin with the argument that "[t]he United States' position was not substantially justified since the IRS did not follow its own applicable published guidance available during the years for which penalties were

assessed and would not satisfy a reasonable person."   (Doc. #159 at ¶ 4.)   Plaintiffs argue that the IRS erroneously determined that they were promoting abusive tax shelters during the administrative proceeding by claiming that their product was "not insurance" because it failed to meet the risk shifting and distribution requirements required for "insurance."   Plaintiffs maintain that the IRS's position was not supported by the applicable published guidance available to plaintiffs for the years at issue – 2010 through 2016.  The only applicable published guidance available to plaintiffs, they assert, was Revenue Ruling 2002-89 and IRS Notice 2016-66.  Additionally, plaintiffs assert that much updated and changed information was available to the IRS by the time of trial.  (Doc. #159, at ¶¶ 28-37.)

The only proceeding in which the RMC Group prevailed was the federal court proceeding.  As discussed earlier, as a general rule such a party is not treated as a "prevailing party" if the United States establishes that its position in the proceeding was substantially justified.   26 U.S.C. § 7430(c)(4)(B)(i).   The government's position is substantially justified if there is a reasonable basis for it both in law and in fact.  However, "the position of the United States shall be presumed not to be substantially justified if the Internal Revenue Service did not follow its applicable published guidance in the administrative proceeding.  Such presumption may be rebutted."   26 U.S.C. §

7430(c)(4)(B)(ii).   The term "applicable published guidance" includes "regulations, revenue rulings, revenue procedures, information releases, notices, and announcements" as well as "private letter rulings, technical advice memoranda, and determination letters."   26 U.S.C. § 7430(c)(4)(B)(iv).  This inquiry is directed to the government's position at two distinct stages: the date the IRS issued the penalty assessment and the period following the filing of the government's answer in the litigation.  See 26 U.S.C. § 7430(c)(7); Grant v. Comm'r, 103 F.3d 948, 952 (11th Cir. 1996).

Plaintiffs have not shown that the Internal Revenue Service failed to follow its applicable published guidance at either of the relevant stages.  Since at least 1941, we have known that "[h]istorically and commonly insurance involves risk-shifting and risk-distributing," Helvering, 312 U.S. at 539, and that Congress's failure to define the term "insurance" does not preclude the IRS or a court from resolving disputes regarding such insurance.  Id. at 540-42.  Revenue Ruling 2002-89 does not preclude the IRS from resolving issues involving such "insurance" which does not satisfy the risk-distributing element.  As another district court has recently stated:

> The IRS recently became suspicious of some micro-captive insurance arrangements. In 2016, it published Notice 2016-66, which designated certain micro-captive transactions as "transactions of interest" under Treas.

- 20 -

Reg. § 1.6011-4(b)(6) and I.R.C. §§ 6111 and
6112, subjecting certain micro-captive
insurers (and their insureds) to special
reporting requirements. See Transaction of
Interest—Section 831(B) Micro-Captive
Transactions, 2016-47 I.R.B. 745 (2016).

Standard Insurances v. Internal Revenue Serv., 2:23-CV-47-HCN-DAO,

__ F. Supp. 3d __, 2024 WL 3912283, at *1 (D. Utah Aug. 23, 2024).

By May 17, 2021, the Supreme Court had highlighted the potential

tax problems of micro-captive transactions.  CIC Services, LLC,

593 U.S. at 213 ("[T]he IRS determined that so-called micro-captive

transactions must be reported because of their potential for tax

evasion.").  By 2022, there was at least one federal appeals court

decision upholding the IRS's legal position.  See Reserve Mech.

Corp. v. Comm'r of Internal Revenue, 34 F.4th 881 (10th Cir. 2022).

See also 26 U.S.C. § 7430(c)(4)(B)(iii) ("[T]he court shall take

into account whether the United States has lost in courts of appeal

for other circuits on substantially similar issues.").  Contrary

to plaintiffs' argument, neither the IRS nor the Court is limited

to information that existed between 2010 and 2016.  26 U.S.C. §

7430(c)(7); Grant, 103 F.3d at 952.  There was no evidence

presented that the IRS took a position different than its own

guidelines or rulings.

    Accordingly, it is now

        **ORDERED:**

Plaintiffs' Motion on Entitlement to Reasonable Litigation Fees/Costs (Doc. #159) is **DENIED**.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of November 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record